**Bennett, Giuliano, McDonnell & Perrone, LLP**
**Attorneys for Plaintiff**
**FLAME S.A.**
**494 Eighth Avenue, 7th Floor**
**New York, New York 10001**
**Telephone:    (646) 328-0120**
**Facsimile:    (646) 328-0121**
**William R. Bennett, III (WB 1383)**
wbennett@bgmplaw.com

10   CV   9557

RECEIVED
DEC 2 3 2010
U.S.D.C. S.D. N.Y.
COMPLETED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

FLAME S.A.,

                              Plaintiff,

          -against-

INDUSTRIAL CARRIERS, INC.,

                              Defendant.
-------------------------------------------------------------X

10-CV-

**VERIFIED PETITION TO**
**ENFORCE FOREIGN**
**JUDGMENT PURSUANT TO**
**UNIFORM FOREIGN**
**MONEY-JUDGMENTS**
**RECOGNITION ACT**

Plaintiff, FLAME S.A., by its attorneys, Bennett, Giuliano, McDonnell & Perrone, LLP,

for its Petition to Enforce Foreign Judgment pursuant to Uniform Foreign Money Judgments

Recognition Act codified in Article 53 of New York's C.P.L.R., in favor of FLAME S.A. and

against INDUSTRIAL CARRIERS, INC., states as follows:

    1.    This is a case within the Court's admiralty and maritime jurisdiction pursuant to

28 U.S.C. §1333, and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules

of Civil Procedure.

    2.    At all times hereinafter mentioned, Plaintiff, FLAME S.A., (hereinafter referred

to as "Flame"), was, and now is, a corporation or other business entity duly organized and

existing under and by virtue of the laws of Switzerland, with an office and principal place of

business in Switzerland.

3.     Upon information and belief, at all times hereinafter mentioned, defendant INDUSTRIAL CARRIERS, INC. (hereinafter referred to as "ICI"), was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of a foreign country, and is registered and authorized to conduct business in the State of New York as a foreign business corporation and has appointed a registered agent to accept service of process.

4.     As part of its trading activities, Flame and ICI entered into a four (4) maritime contracts called Forward Freight Swap Agreements (hereinafter referred to as the "Agreements").

5.     Pursuant to the terms and conditions of the Agreements, ICI defaulted and breached the Agreements.

6.     Therefore, in or about November 2010, Flame commenced an action in London, England to recover the amounts due and owing under the Agreements. *Attached hereto as Exhibit A are true and correct copies of the Claim Form and the Particulars of Claim which were filed in the High Court of Justice, Queen's Bench Division, Commercial Court Registry in London, England.*

7.     On December 13, 2010, the High Court of Justice, Queen's Bench Division, Commercial Court Registry entered a judgment for Flame as against the defendant and ordered that the defendant pay Flame a total of USD $19,907,118.36 (hereinafter referred to as the "Judgment"). *Attached hereto as Exhibit B is a true and correct copy of the Judgment for Claimant issued by the High Court of Justice, Queen's Bench Division, Commercial Court Registry, London, England.*

8.      Pursuant to the Order issued by the High Court of Justice, Queens Bench Division, Commercial Court Registry, Defendant ICI is obligated to pay Flame $19,907,118.36.

9.      The Order issued by the High Court of Justice, Queen's Bench Division, Commercial Court Registry is a final Judgment, conclusive and enforceable in England.

10.      Flame, having obtained a Judgment against ICI in the High Court of Justice, Queens Bench Division, Commercial Court Registry, now seeks confirmation of the Judgment by this Court and respectfully requests that this Court enter judgment thereon.

**WHEREFORE,** Plaintiff prays:

1.      For an Order pursuant to New York's Uniform Foreign Money Judgments Recognition Act, codified in New York's C.P.L.R. Article 53, recognizing and confirming the foreign Judgment rendered in favor of Flame S.A. and against defendant Industrial Carriers, Inc. in the High Court of Justice, Queen's Bench Division Commercial Court Registry of London, England in the amount of US $19,907,118.36, plus interest at a rate of eight (8) percent from December 13, 2010.

2.      For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
          December 22, 2010

Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Plaintiff
FLAME S.A.

William R. Bennett, III
494 Eighth Avenue, 7th Floor
New York, New York 10122
Telephone: (646) 328-0120
Facsimile: (646) 328-0121
wbennett@bgmplaw.com

## ATTORNEY VERIFICATION

WILLIAM R. BENNETT, III, being duly sworn, deposes and says as follows:

1.  I am a partner with the law firm of Bennett, Giuliano, McDonnell & Perrone, LLP, attorneys for plaintiff in this action, I have read the foregoing Petition to Enforce Foreign Judgment Pursuant to the Uniform Foreign Money-Judgments Act and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.  The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.  The reason this verification is made by an attorney and not by the plaintiff is because the plaintiff is a foreign entity, none of whose officers are presently within this Judicial district

William R. Bennett, III

# EXHIBIT A



# Claim Form



**In the High Court of Justice**
**Queen's Bench Division**
**Commercial Court**
**Royal Courts of Justice**

| | for court use only |
|---|---|
| Claim No. | 2010 FOLIO 1332 |
| Issue date | 12 TH NOV 2010 |

NO SEAL

**Claimant(s)**

FLAME SA

of

Via San Salvatore 13, 6902 Lugano - Paradiso, Switzerland

**Defendant(s)**

INDUSTRIAL CARRIERS INC

of

PO Box 1405, Majuro, MH, 96960, Marshall Islands c/o 1, St., Bazarnaya Street, 65014 Odessa, Ukraine

Name and address of Defendant receiving this claim form

INDUSTRIAL CARRIERS INC,
PO Box 1405,
Majuro,
MH,
96960, Marshall Islands

c/o 1, St., Bazarnaya Street,
65014 Odessa,
Ukraine

| Amount claimed | US$17,200,625 |
|---|---|
| Court fee | £1,530 |
| Solicitor's costs | tba |
| Total amount | |

| Claim No. | |
|---|---|

Brief details of claim

The Claimant claims its Loss in the sum of US$ 17,200,625, alternatively damages, pursuant to the terms of four Forward Freight (Swap) Agreements entered into by the Claimant and the Defendant with references 8.3012.3.MeCi.TC, 024832, 13019 and 8.8029.4.MeCi.TC ("the Contracts").

The Defendant caused the Automatic Early Termination of the Contracts by applying on 15th October 2008 for the appointment of a Reporting Judge and Receiver in respect of it or all or substantially all of its assets. By reason of this Automatic Early Termination, the Claimant is entitled to claim its Loss pursuant to the terms of the Contracts.

Particulars of claim (*attached)(*will follow if an acknowledgment of service is filed that indicates an intention to defend the claim)

Statement of Truth

*(I believe)(The Claimant believes) that the facts stated in this claim form *(and the particulars of the claim attached to this claim form) are true.

* I am duly authorised by the claimant to sign this statement

Full name   GRAEME LLOYD

Name of *(claimant)('s solicitor's firm) Winter Scott LLP

signed _____   position or office held Partner
*(Claimant)('s solicitor)                (if signing on behalf of firm, company or corporation)

*delete as appropriate

WINTER SCOTT
St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: +44 (0)20 7367 8999

Claimant's or solicitor's address to which documents or payments should be sent if different from overleaf including (if appropriate) details of DX, fax or e-mail.

IN THE HIGH COURT OF JUSTICE                     Claim No. 2010 Folio 1332
QUEEN'S BENCH DIVISION
COMMERCIAL COURT

B E T W E E N :

FLAME SA

Claimant

-and-

INDUSTRIAL CARRIERS INC

Defendant

---

PARTICULARS OF CLAIM

---

1.      The Claimant and the Defendant entered into four Forward Freight (Swap)
        Agreements ("FFA") as contained in or evidenced by Confirmations incorporating the
        Forward Freight Agreement Brokers Association 2007 terms and also incorporating
        the 1992 ISDA Master Agreement (Multicurrency – Cross Border) (without schedule)
        with amendments.

*Contract 8.3012.3.MeCi.TC*

1.1     On or around 12th March 2008 the Claimant as Seller and the Defendant as
        Buyer concluded an FFA with reference 8.3012.3.MeCi.TC in respect of the
        Baltic Panamax Index average of 4 Panamax time charter routes for a total
        quantity of 365 days over the year 2009 ("Contract 8.3012.3.MeCi.TC").

1.2     Contract 8.3012.3.MeCi.TC (on which the Claimant relies for its full terms and
        effect) contained, inter alia, the following express terms:

*Confirmation*

        *Product:  BPI Average 4 Panamax TC Routes*
              *Months:*                    *Quantity:*

1

| | |
|---|---|
| *January 2009* | *31 days* |
| *February 2009* | *28 days* |
| *March 2009* | *31 days* |
| *April 2009* | *30 days* |
| *May 2009* | *31 days* |
| *June 2009* | *30 days* |
| *July 2009* | *31 days* |
| *August 2009* | *31 days* |
| *September 2009* | *30 days* |
| *October 2009* | *31 days* |
| *November 2009* | *30 days* |
| *December 2009* | *31 days* |

*...*

*Settlement:      Monthly, against all BPI days of the month*

*...*

*Otherwise NEW FFABA2007 form*

*1) Contract Route(s):*
*As per the arithmetical average of the Routes 1A, 2A, 3A and 4 [Transatlantic TC Round Voyage, TC Trip Out, Tranpacific Round Voyage, TC Trip Back] of the Baltic Panamax Index as defined by the Baltic Exchange on the Contract Date and any route replacing or substituting that route subsequently published by the Baltic Exchange on or before the Settlement Date and with effect from the date of such replacement or substitution.*

1.3   The contract rate for Contract 8.3012.3.MeCi.TC was US$48,000 per day.

*Contract 024832*

1.4   On or around 19th May 2008, the Claimant as Buyer and the Defendant as Seller concluded an FFA with contract number 024832 in respect of the average of all Baltic Panamax Index days of the contract months for a total of 182.5 days over the year 2009 ("Contract 024832").

1.5   Contract 024832 (on which the Claimant relies for its full terms and effect) contained, inter alia, the following express terms:

*Confirmation*

INDEX ROUTE:      *BPI TC – Baltic Panamax Index TC Average of Routes (1A/2A/3A/4)*

TRADE QUANTITY:   *Feb09:14 days. Apr09, Jun09, Sep09, Nov09: 15 days p/m. Jan 09, Mar09, May09, Jul09, Aug09, Oct09, Dec09: 15.5 days p/m.*

...

CONTRACT:         *FFABA 2007*

...

*1) Contract Route(s):*
*BPI T C as defined by the Baltic Exchange on the Contract Date and any route replacing or substituting that route subsequently published by the Baltic Exchange on or before the Settlement Date and with effect from the date of such replacement or substitution.*

1.6   The contract rate for Contract 024832 was US$63,500 per day.

*Contract 13019*

1.7   On or around 14th August 2008 the Claimant as Seller and the Defendant as Buyer concluded an FFA with confirmation number 13019 in respect of the average of 4 Panamax time charter routes for a total quantity of 182.5 days over the year 2010 ("Contract 13019").

1.8   Contract 13019 (on which the Claimant relies for its full terms and effect) contained, inter alia, the following express terms:

*Confirmation*

| *Quantity Traded:* | *182.5* | *DAYS* |
|---|---|---|
| | *Jan 15.5 DAYS* | |
| | *Feb 14 DAYS* | |
| | *Mar 15.5 DAYS* | |
| | *Apr 15 DAYS* | |
| | *May 15.5 DAYS* | |
| | *Jun 15 DAYS* | |
| | *Jul 15.5 DAYS* | |
| | *Aug 15.5 DAYS* | |
| | *Sep 15 DAYS* | |
| | *Oct 15.5 DAYS* | |
| | *Nov 15 DAYS* | |
| | *Dec 15.5 DAYS* | |

*Contract Route:*          *Average 4 Panamax TC routes*

...

| *Term of the Transaction:* | *01/01/2010* | *Effective Date / Start Date* |
|---|---|---|
| | *31/12/2010* | *Termination Date* |

...

*1) Contract Route(s):*

*As per Average 4 (FOUR) Time Charter Routes of the Baltic Panamax Index as defined by the Baltic Exchange on the Contract Date and any route replacing or substituting that route subsequently published by the Baltic Exchange on or before the Settlement Date and with effect from the date of such replacement or substitution.*

1.9   On a true construction of Contract 13019, alternatively by reason of an implied term implied to give effect to the parties' obvious but unexpressed intention, alternatively by reason of an estoppel by convention arising from the parties previous dealings, the four time charter routes referred to in clause 1) of Contract 13019 were routes 1A, 2A, 3A and 4 of the Baltic Panamax Index.

1.10  The contract rate for Contract 13019 was US$45,000 per day

*Contract 8.8029.4.MeCi.TC*

1.11 On or around 29th August 2008, the Claimant as Seller and the Defendant as Buyer concluded an FFA with the reference 8.8029.4.MeCi.TC/Ifchor in respect of the Baltic Panamax Index Average for 4 Panamax time charter routes for a total quantity of 182.5 days over the year 2009 ("Contract 8.8029.4.MeCi.TC").

1.12 Contract 8.8029.4.MeCi.TC (on which the Claimant relies for its full terms and effect) contained, inter alia, the following express terms:

<u>*Confirmation*</u>

*Product:  BPI Average 4 Panamax TC Routes*

| <u>*Months:*</u> | <u>*Quantity:*</u> |
|---|---|
| *January 2009* | *15.5 days* |
| *February 2009* | *14 days* |
| *March 2009* | *15.5 days* |
| *April 2009* | *15 days* |
| *May 2009* | *15.5 days* |
| *June 2009* | *15 days* |
| *July 2009* | *15.5 days* |
| *August 2009* | *15.5 days* |
| *September 2009* | *15 days* |
| *October 2009* | *15.5 days* |
| *November 2009* | *15 days* |
| *December 2009* | *15.5 days* |

*...*

*Settlement:       Monthly, against all BPI days of the month*

*...*

*Otherwise NEW FFABA2007 form*

*1) Contract Route(s):*

*As per the arithmetical average of the Routes 1A, 2A, 3A and 4 [Transatlantic TC Round Voyage, TC Trip Out, Tranpacific Round Voyage, TC Trip Back] of*

*the Baltic Panamax Index as defined by the Baltic Exchange on the Contract Date and any route replacing or substituting that route subsequently published by the Baltic Exchange on or before the Settlement Date and with effect from the date of such replacement or substitution.*

1.13 The contract rate for Contract 8.8029.4.MeCi.TC was US$57,750 per day.

2.  The four Contracts together shall be referred to together in these Particulars of Claim as "the Contracts"

3.  The Contracts contained, *inter alia*, the following express terms:

<u>*Confirmation*</u>

5)  *Settlement Date:*

    *The last Baltic Exchange Index publication day of each Contract Month.*

6)  *Settlement Rate:*

    (a)  *Each settlement rate (the 'Settlement Rate') shall be the unweighted average of the rates for the Contract Route(s) published by the Baltic Exchange over each Settlement Period (defined as All Baltic Exchange Index publication days of each applicable Contract Month up to and including the Settlement Date).*

    ...

7)  *Settlement Sum:*

    *The 'Settlement Sum' is the difference between the Contract Rate and the Settlement Rate multiplied by the Quantity by Contract Month. If the Settlement Rate is higher than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is lower than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.*

...

9)      *ISDA Master Agreement:*

...

*This Confirmation constitutes and incorporates by the provisions of the 1992 ISDA® Master Agreement (Multicurrency – Cross Border) (without Schedule) as if they were fully set out in this Confirmation and with only the following specific modifications and elections:*

(a)     *Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;*

(b)     *Seller is the Calculation Agent except whether the Seller is the Defaulting Party in which event Buyer is the Calculation Agent;*

...

(e)     *for the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;*

(f)     *Automatic Early Termination will apply to both parties;*

(g)     *the Termination currency is United States dollars;*

(h)     *the Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly;*

...

*The ISDA Master Agreement*

...

2.      *Obligations*

(a)     *General Conditions.*

(i)      *Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.*

(ii)     *Payments under this Agreement will be made on the due date for value on that date...*

(iii)    *Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant*

*Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.*

...

5.    *Events of Default and Termination Events*

(a)    *Events of Default. The occurrence at any time with respect to a party or, if applicable, any Credit Support Provider of such party or any Specified Entity of such party of any of the following events constitutes an event of default ("an Event of Default") with respect to such party:-*

...

*(vii) Bankruptcy. The party, any Credit Support Provider of such party or any applicable Specified Entity of such party:-*

*... (6) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets;*

...

6.    *Early Termination*

(a)    *Right to Terminate Following Event of Default. If at any time on Event of Default with respect to a party (the "Defaulting Party") has occurred and is then continuing, the other party (the "Non-defaulting Party") may, by no more than 20 days notice to the Defaulting Party specifying the relevant Event of Default designate a day not earlier than the day such notice is effective as an Early Termination Date in respect of all outstanding Transactions. If, however, "Automatic Early Termination" is specified in the Schedule as applying to a party then an Early Termination date will occur immediately upon the occurrence with respect to such party of an Event of Default specified in Section 5(a)(vii)(1), (3), (5), (6)...*

...

(d)    *Calculations*

...

*(ii) Payment Date. An amount calculated as being due in respect of any Early Termination Date under Section 6(e) will be payable on the day that notice of the amount payable is effective (in the event of an Early Termination Date which is designated or occurs as a result of an Event of Default) ... Such amount will be paid together with... interest thereon (before as well as after judgment) in the Termination*

*Currency, from (and including) the relevant Termination Date to (but excluding) the date such amount is paid, at the Applicable Rate...*

*(e)     Payments on Early Termination. If an Early Termination Date occurs, the following provisions shall apply based on the parties' election in the Schedule of a payment measure, either "Market Quotation" or "Loss", and a payment method, either the "First Method" of the "Second Method"... The amount, if any, payable in respect of an Early Termination Date and determined pursuant to this section with be subject to any Set-off.*

> *(i)     Events of Default. If the Early Termination Date results from an Event of Default:-*
>
> *...*
>
> > *(4) Second Method and Loss. If the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement. If that amount is a positive number m the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.*

*...*

*Definitions*

*...*

*"Loss" means, with respect to this Agreement...and a party, the Termination Currency Equivalent of an amount that party reasonably determines in good faith to be its total losses and costs...in connection with this Agreement...including any loss of bargain..A party will determine its Los as of the relevant Early Termination Date, or, if that is not reasonably practicable, as of the earliest date thereafter as is reasonably practicable. A party may (but need not) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets. "*

**The Automatic Early Termination Event**

4.     On or around 15th October, 2008, the Defendant applied to the Piraeus Multimember Court of First Instance (Ex-Parte Jurisdiction – Admiralty Division) for the granting

of a petition for bankruptcy and for the appointment of a Reporting Judge and a Receiver in respect of the Defendant's affairs (the "15th October application").

5.      The 15th October application was an Event of Default within the meaning of section 5(a)(vii)(6) of the Contracts in that the Defendant had, by that application, "[*sought*] *the appointment of a ... receiver, trustee, custodian or other similar official for it or for all or substantially all its assets*".

6.      Pursuant to section 6(a) of the Contracts, the 15th October application as an Event of Default gave rise to a right of Early Termination of the Contracts by the Claimant.

7.      As the Contracts as evidenced by the Confirmations provided in clause 9(f) for Automatic Early Termination to apply to both parties, the Contracts were automatically terminated by reason of the 15th October application in accordance with section 6(a) of the Contracts.

8.      The 15th October 2008 was therefore the Early Termination Date.

**The Defendant's Liability Following the Automatic Early Termination Event**

9.      Pursuant to section 6(e)(i)(4) of the Contracts, following the Automatic Early Termination of the Contracts, the Claimant was and is entitled to recover its Loss under the Contracts.

10.     The Claimant's Loss is calculated as set out in Schedule 1 to these Particulars of Claim. The Claimant's Loss has been calculated in good faith with reference to the BPI figures produced by Ichfor, the brokers of the Contracts, on 31st October 2008, that date being the earliest date after the date of Automatic Early Termination as it was reasonably practicable to calculate the Claimant's Loss in accordance with the Definition of "Loss" contained in the ISDA Master Agreement and therefore the Contracts.

11.     On a mark-to-market basis as calculated as set out in paragraph 10 above, the Claimant's Loss is US$17,200,625.00

12. Pursuant to the terms of the Contracts, the Claimant is also entitled to and claims interest on its Loss at the Applicable Rate, namely the one month USD-LIBOR rate plus 2%, reset daily and compounded monthly from the date of the Early Termination Date until the date of payment.

**AND the Claimant Claims:**

i) The sum of US$17,200,625.00, alternatively damages.

ii) Interest as aforesaid, alternatively interest pursuant to section 35A of the Senior Courts Act 1985 on such sum, at such a rate and for such a period as the Court shall think fit.

Statement of Truth

The Claimant believes that the facts set out in these Particulars of Claim are true.

I am duly authorised by the Claimant to sign these Particulars of Claim.

Signed        ........................................................................

Name         ......Graeme Lloyd..............................................

Position      ......Partner, Winter Scott solicitors.............................

Date          ............15th November 2010.................................

SERVED this   15th day of November 2010 by Winter Scott, St Olave's House, Ironmonger Lane, London, EC2V 8EY, Solicitors for the Claimants.

# EXHIBIT B

N30(HC)        JUDGMENT FOR CLAIMANT (DEFAULT HC)

Judgment for Claimant
(in default)

| | |
|---|---|
| In the High Court of Justice | |
| QUEEN'S BENCH COMMERCIAL COURT | Division |
| | District Registry |
| Claim No. | 2010 FOLIO 1332 |
| Claimant (including ref.) | FLAME SA ref: GL/nmq/720/5 |
| Defendant (including ref.) | INDUSTRIAL CARRIERS INC ref unknown |
| Date | 13/12/10 |

To [Claimant][Defendant][Solicitor]

Seal
13 DEC 2010

**To the Defendant**

You have not replied to the claim form.    US$ 17,200,625      US$ 2,575,859.18

It is therefore ordered that you must pay the claimant £    for debt [and interest to date of judgment] and £    for costs [less £    which you have already paid]      US$ 13,216.43

You must pay to the claimant a total of    £ US$ 19,707,118.36 or the sterling equivalent at the time of payment

[by instalments of £    per [week] [month]

[the first payment to reach the claimant] by    [and on or before this date each [week] [month] until the debt has been paid]

**Warning**

If you ignore this order your goods may be removed and sold, or other enforcement proceedings may be taken against you. If this happens further costs will be added. If your circumstances change and you cannot pay, ask at the court office what you can do.

**Notes for the defendant**

If you did reply to the claim form and believe judgment has been entered wrongly in default, you may apply to the court office giving your reasons why the judgment should be set aside. An application form is available for you to use and you will need to pay a fee. A hearing may be arranged and you will be told when and where it will take place. If you live in, or your solicitor's business is in, another court's area, the claim may be transferred to that court.

**Address for payment**

WINTER SCOTT LLP
ST OLAVE'S HOUSE
IRONMONGER LANE
LONDON
EC2V 8EY
UK

**How to pay**

• Payment(s) must be made to the person named at the address for payment, giving the claimant's reference and claim number
• DO NOT bring or send payments to the court — they will not be accepted
• You should allow at least 4 days for your payment to reach the claimant or his representative
• Make sure that you keep records and can account for all payments made. Proof may be required if there is any disagreement. It is not safe to send cash unless you use registered post

The court office at COMMERCIAL COURT REGISTRY, ROYAL COURTS OF JUSTICE, STRAND, LONDON, WC2A 2LL, UNITED KINGDOM

is open between 10am and 4.30pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

N30(HC) Judgment for Claimant (in default) (January 2002)      Crown copyright. Reproduced by Sweet & Maxwell Ltd.

# Request for judgment and reply to admission (specified amount)

**Complete section A or B.**

If you complete section A you must also confirm, where applicable, that particulars of claim have been served in accordance with the rules.

**In all cases you must complete sections C and D.**

If the defendant has given an address on the form of admission to which correspondence should be sent, which is different from the address shown on the claim form, you must tell the court.

Remember to sign and date the form. Your signature certifies that the information you have given is correct.

| In the | HIGH COURT OF JUSTICE, QUEEN'S BENCH DIVISION, COMMERCIAL COURT |
|---|---|
| **Claim No.** | 2010 Folio 1332 |
| **Claimant** (including ref) | FLAME SA<br>Ref: GL/nma/720/5 |
| **Defendant** (including ref) | INDUSTRIAL CARRIERS INC<br>Ref: unknown |

**A** [✓] The defendant has not filed an admission or defence to my claim

    [✓] I confirm that particulars of claim have been served on the defendant in accordance with the rules.

Now complete section C and all the judgment details at section D. Decide how and when you want the defendant to pay. You can ask for the judgment to be paid by instalments or in one payment.

**B** [ ] The defendant admits that all the money is owed

Tick only **one** box below and complete section C and all the judgment details at section D.

    [ ] **I accept the defendant's proposal for payment**

    Say how the defendant intends to pay. The court will send the defendant an order to pay. You will also be sent a copy.

    [ ] **The defendant has not made any proposal for payment**

    Say how you want the defendant to pay. You can ask for the judgment to be paid by instalments or in one payment. The court will send the defendant an order to pay. You will also be sent a copy.

    [ ] **I do NOT accept the defendant's proposal for payment**

    Say how you want the defendant to pay. Give your reasons for objecting to the defendant's offer of payment on the back of this form. Send this form to the court **with defendant's admission N9A.** The court will fix a rate of payment and send the defendant an order to pay. You will also be sent a copy.

**C** Defendant's date of birth

    [ ] Defendant's date of birth is not stated in the form of reply but is known to the claimant as:

    [ ] Defendant's date of birth is not stated in the form of reply and is not known to the claimant.

**D** Judgment details

I would like the defendant to be ordered to pay:

    [✓] immediately

    [ ] by instalments of £ _____ per month

    [ ] in full by __/__/____

| | |
|---|---|
| Amount of claim as admitted (including interest at date of issue) | US$ 17,200,625 +<br>US$ 2,555,931.18 (inter |
| Interest since date of claim (if any)<br>Period from 15.11.10 to 10.12.10<br>Rate 2.26% (1 month US LIBOR + 2% compounded monthly) | US$ 94,915.08 |
| Court fees shown on claim | £1,530   US$ 2,422.7 |
| Solicitor's costs (if any) on issuing claim | £5,541.50/<br>US$8,780.09 |
| Sub Total | US$ 19,902,682.02 |
| Solicitor's costs (if any) on entering judgment | £2,800 fixture<br>US$4,436.34 |
| Sub Total | US$ 19,907,118.36 |
| Deduct amount (if any) paid since issue | O |
| **Amount payable by defendant** | US$ 19,907,118.36 |

I certify that the information given is correct.

| Signed | [signature] | Position or office held | Partner, Winter Scott LLP |
|---|---|---|---|
| | ~~(Claimant)~~ (Claimant's solicitor) ~~(Litigation friend)~~ | | (if signing on behalf of firm or company) |
| Date | 1 3 / 1 2 / 2 0 1 0 | | *Please return the completed form to the court.* |